IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DARRYL L. CHERRY,

     Plaintiff,

v.                       Civil Action No. 3:10CV434

OFFICER SHERIN,

     Defendant.

MEMORANDUM OPINION

Plaintiff Darryl L. Cherry, a Virginia prisoner proceeding pro se and in forma pauperis, brings this action pursuant to 42 U.S.C. § 1983. Cherry asserts that Defendant Shearin,[1] a correctional officer at Deerfield Correctional Center ("DCC") where Cherry was housed at the time of the incident, violated Cherry's Eighth Amendment[2] right to freedom from cruel and unusual punishment by shoving him in the back while performing a search. This matter is now before the Court on Shearin's Motion for Summary Judgment. (Docket No. 23.) Shearin provided the appropriate Roseboro[3] notice to Cherry. (Docket No. 25.)

---

[1] The Court notes that the Officer Sherin referred to in Cherry's complaint is actually Officer M. Shearin. The Court hereafter will refer to Shearin by the correct spelling of her name.

[2] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

[3] Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975).

Cherry has responded. (Docket Nos. 32, 33.) The matter is ripe for disposition.

## I. Standard for Summary Judgment

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is the responsibility of the party seeking summary judgment to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." Id. at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." United States v. Carolina Transformer Co., 978 F.2d 832, 835 (4th Cir. 1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). However, a mere scintilla of evidence will not preclude summary judgment. Anderson, 477 U.S. at 251. "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." Id. (internal quotation marks omitted).

Additionally, "'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'" Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 & n. 7 (5th Cir. 1992)); see Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . ."). Therefore, the Court's disposition of the Motion for Summary Judgment is based upon the sworn complaint, the materials that Shearin submitted in support of her Motion for Summary Judgment, and the materials that Cherry submitted in opposition to the Motion for Summary Judgment.

3

In support of her Motion for Summary Judgment, Shearin has submitted her own affidavit and those of Sergeant D. Shearin[4] and R. Brown.[5]  (Mot. Summ. J. Ex. I ("Shearin Aff.").)  Shearin also submitted copies of Cherry's medical records.  (Docket No. 24-3, at 4-11.)  In response, Cherry submitted his sworn complaint and attached copies of his informal and formal grievances concerning this incident, as well as copies of his medical records.  Cherry also submitted his own affidavit and a sworn document entitled "OPPOSITION OF MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT."  (Docket No. 33 ("Opposition Memorandum").)[6]

Of course, the facts offered by affidavit or sworn declaration must set out facts that would be admissible in evidence.  See Fed. R. Civ. P. 56(c)(4).  To that end, the statement in the affidavit or sworn declaration "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).

[4] Sgt. Shearin is a staff member at DCC who is not related to the defendant, Shearin.  (Mot. Summ. J. Ex. II ("Sgt. Shearin Aff.") ¶¶ 1, 3.)

[5] R. Brown is the Health Administrator at St. Bride's Correctional Center.  (Mot. Summ. J. Ex. III ("Brown Aff.") ¶ 2.)

[6] Cherry also submits a Motion for Leave to Amend requesting permission to submit two more of his own affidavits.  These affidavits largely repeat the sworn statements in Cherry's Complaint and Opposition Memorandum.  Nevertheless, the Motion for Leave to Amend (Docket No. 35) will be granted.

4

Therefore, "summary judgment affidavits cannot be conclusory or based upon hearsay." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996) (internal citations omitted) (citing Rohrbough v. Wyeth Labs., Inc., 916 F.2d 970, 975 (4th Cir. 1990); Md. Highways Contractors Ass'n v. Maryland, 933 F.2d 1246, 1252 (4th Cir. 1991)).

Several of the statements in Cherry's Complaint and Opposition Memorandum run afoul of these basic principles. For example, in his Opposition Memorandum, Cherry relates several statements from fellow inmates concerning the incident between him and Defendant Shearin. (Opp'n Mem. 5.) Those statements, if offered by Cherry, would be inadmissible hearsay. See Fed. R. Evid. 801, 802.[7] In light of the foregoing principles, the following facts are established for the purposes of the motion for summary judgment. And, all permissible inferences are drawn in favor of Cherry.

---

[7] Of course, if the other inmates were to testify in court about their personal knowledge that would be admissible. And, if they had submitted affidavits outlining what they would testify about, those affidavits could be considered assuming they were based on personal knowledge and posited information that was otherwise admissible. That, however, is not the current state of the record.

## II.   Summary of Pertinent Facts

### A.   Use of Excessive Force Against Cherry

On or about June 6, 2008, Cherry was leaving the dining room at DCC.  (Compl. 4.)   Cherry placed his tray in the appropriate tray slot and prepared for a pat down search.  (Id.) Cherry placed himself in front of Shearin with his back to her and his hands in the air.  (Id.)  "[A]ll of a sudden [Cherry] felt this force to [his] upper back that stun [him] knocking [him] down to the floor."  (Id.)   Cherry managed to "kick [his] left leg under [him]" and prevent himself from falling to the floor.  (Id.)   Cherry found himself looking up at Sergeant D. Shearin.  (Id.)   Cherry then turned and looked at the defendant, Shearin, who was "standing there with both hands fully extended."  (Id.)   The defendant, Shearin, stated, "'Don't get too close to me.'"  (Id.)   "[Cherry] raised back up saying, 'Woman just do your job,' . . . then [Cherry exited] the Dining Hall."  (Id. at 5.)[8]

-----

[8] For her part, Shearin states that she "was in the dining hall . . . observing the offenders, moving around and holding the doors for offenders in wheelchairs."  (Shearin Aff. ¶ 4.) Shearin swears that she "[does] not recall ever seeing Cherry or seeing any offender fall."  (Id.)   Shearin further avers that she "did not assault offender Cherry in any way as he alleges in his law suit."  (Id.)   Sergeant Shearin also swears that "[Defendant Shearin] did not push or assault offender Cherry as he alleges."  (Sgt. Shearin Aff. ¶ 4.)

## B.   Cherry's Injuries

Cherry does not complain that he immediately experienced any significant pain due to Shearin's actions.   Nevertheless, Cherry states that "[a]s time progressed," he began to suffer from headaches, stiffness in his neck, pain in his shoulders, pain in his back, and pain in his left knee.   (Id.)   Cherry further alleges that he feels "like needles [are] sticking in the back of my neck."   (Id.)   Cherry asserts that,

> Daily I struggle with this pain.   The doctor and I for the concern of my health have come to the conclusion that [I] should not take the medication continually for fear what the medicine might do to my internal organs leaving me have to deal with headaches, headflashes, neck pain upper and lower back pain, the nerve that run down from my back (lower) through my left leg and left knee.   Also shoulder pain from time to time.

(Opp'n Mem. 7 (capitalization corrected).)

Cherry's medical records, however, indicate that Cherry had knee and shoulder problems that predate his alleged encounter with Shearin.   Brown says, in his affidavit, that Cherry's shoulder and knee problems existed prior to the June 6, 2008 incident.[9]   (Brown Aff. ¶¶ 4-10.)   Brown notes that Cherry's

---

[9] The record suggests that Cherry was moved to St. Bride's sometime after he filed his complaint on June 28, 2010 (see Compl. 1 (suggesting that Cherry was housed at Greensville Correctional Center at the time of filing)), and remained there until approximately August 30, 2011.   (See Docket No. 36 (letter from St. Bride's indicating that Cherry had been transferred to another facility).)   Brown swears that he has personal knowledge of Cherry's medical conditions.   (Brown Aff. ¶ 2.)

medical records reflect that Cherry was seen by the medical
staff in January, February, and August of 2004 for pain in both
shoulders.  (Brown Aff. ¶¶ 4-6.)   Cherry's medical records also
reveal that Cherry was again seen by medical personnel for
shoulder pain in January 2005 and November of 2006.  (Id. ¶¶ 7-
9.)  Further,

> [Cherry's medical r]ecords reflect [that] on
> March 26, 2008 [more than two months before the June
> 6, 2008 incident] Cherry complained of right leg pain.
> Cherry stated he injured himself while shadowboxing.
> The doctor noted that the pain Cherry described was
> sciatic nerve pain and that Cherry was satisfied with
> the explanation because he stated he had [that] injury
> before.

(Id. ¶ 10.)

With respect to the June 6, 2008 incident, Cherry waited
until June 13, 2008 to visit the medical department.  At that
visit,

> Cherry stated that on June 5, 2008, while exiting the
> dining hall he was pushed from behind and almost fell
> to the floor.  Cherry stated that he works out daily,
> jogs, shadow boxes, and lifts weights.  Cherry stated
> he began having headaches six days ago along with
> stiffness in his neck.  He stated he had pain in both
> shoulders, his lower back, his neck and his knee.
> Cherry was asked to rate his pain on a scale of 1 to
> 10.  He rated his pain to be a 4 and stated it was not
> constant.  Cherry was prescribed Motrin for the pain.

(Id. ¶ 11.)

### III.  Analysis

To survive summary judgment on an Eighth Amendment claim, an inmate must demonstrate that "'the prison official acted with a sufficiently culpable state of mind (subjective component) and . . . the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component).'" Iko v. Shreve, 535 F.3d 225, 238 (4th Cir. 2008) (quoting Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996)). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'" Id. (citing Wilson v. Seiter, 501 U.S. 294, 298-300 (1991)). "What must be established with regard to each component 'varies according to the nature of the alleged constitutional violation.'" Williams, 77 F.3d at 761 (quoting Hudson v. McMillian, 503 U.S. 1, 5 (1992)).

### A.  Excessive Force Inquiry

When an inmate claims that prison officials used excessive force against his person, the objective component is less demanding relative to the subjective component. See id. With respect to the objective component, the inmate must demonstrate that the "nature" or amount of force employed "was nontrivial." Wilkins v. Gaddy, 130 S. Ct. 1175, 1179 (2010); see id. at 1178

9

(observing that "a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim" (quoting Hudson, 503 U.S. at 9)).   Regarding the subjective component, the inmate must demonstrate "'wantonness in the infliction of pain.'"   Iko, 535 F.3d at 239 (quoting Whitley v. Albers, 475 U.S. 312, 322 (1986)).   Specifically, "the 'core judicial inquiry' regarding the subjective component of an excessive force claim is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'"   Id. (quoting Hudson, 503 U.S. at 7).

The Supreme Court has identified a number of "factors to assist courts in assessing whether an officer has acted with wantonness."   Iko, 535 F.3d at 239 (internal quotation marks omitted).   These include:

> (1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) 'any efforts made to temper the severity of a forceful response.'

Id. (quoting Whitley, 475 U.S. at 321).   Additionally, although not dispositive, the extent of the injury suffered by the inmate is also relevant to the subjective inquiry.   Wilkins, 130 S. Ct. at 1178.   The extent of the injury "may suggest whether the use of force could plausibly have been thought necessary in a

particular situation" or "provide some indication of the amount of force applied." Id. (internal quotation marks omitted). Comments or actions by a defendant suggesting a malicious motive also are relevant to the subjective inquiry. See Orem v. Rephann, 523 F.3d 442, 447 (4th Cir. 2008) (observing that evidence of the defendant's motives is relevant to the excessive force inquiry). "From such considerations inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." Whitley, 475 U.S. at 321 (emphasis added) (citing Duckworth v. Franzen, 780 F.2d 645, 652 (7th Cir. 1985)).

### B.   Analysis of Cherry's Claim

Cherry does not assert that Shearin struck him with a weapon or with a closed fist blow. Rather, he states that, after feeling the "force" contact his back, he turned and saw Shearin "standing there with both hands fully extended." (Compl. 4.)   From this description, the Court can draw the inference that Shearin pushed Cherry with her open palms.[10]

---

[10]   Of course, given the facts of record, it could also be inferred that the extended hands were a demonstrative warning that accompanied her verbal statement "don't get too close to me," made while Cherry was getting up.   And, if that is the inference that is drawn, the record is of dubious probative effect respecting any proof that Shearin even shoved Cherry.

Although, by pushing Cherry, Defendant Shearin may have acted unprofessionally, no reasonable jury could conclude that her conduct supports an inference of malicious and sadistic intent.[11] "The Supreme Court has instructed that 'not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'" Stanley v. Hejirika, 134 F.3d 629, 636 (4th Cir. 1998) (quoting Hudson, 503 U.S. at 9.)   Accordingly, and for the reasons articulated more fully below, Cherry's claim will be denied.

### 1.   Need for the Application of Force

Cherry states that he was standing with his back to Shearin and that his "hands [were] in the air" when he felt a "force" contact his upper back.  (Compl. 4.)  Then, Cherry claims, that Shearin stated, "Don't get too close to me."   (Id.)  Shearin's comment indicates that she perceived a threat from Cherry due to his close proximity to her.   Nothing indicates, however, that Shearin gave Cherry any verbal warning that his conduct was inappropriate.   Though this factor marginally favors Cherry, the

_____

However, the inference most favorable to Cherry is that Shearin shoved him.

[11] "One acts 'maliciously' by undertaking, without just cause or reason, a course of action intended to injure another; in contrast, one acts 'sadistically' by engaging in extreme or excessive cruelty or by delighting in cruelty." Howard v. Barnett, 21 F.3d 868, 872 (8th Cir. 1994) (citing Webster's Third New International Dictionary 1367, 1997-98 (unabridged 1981); Black's Law Dictionary 956, 958, 1336 (6th ed. 1990); The American Heritage Dictionary 759, 1084 (2d ed. 1982)).

record does not permit a jury to find that Shearin acted maliciously or sadistically. Moreover, the Court is mindful that "[t]he infliction of pain in the course of a prison security measure . . . does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." Whitley, 475 U.S. at 319. Here, the "degree of force . . . applied," id., though perhaps not strictly necessary,[12] was slight.

In sum, if it is assumed that the proof would show that Shearin shoved Cherry, it would appear that she did so to separate Cherry, a physically fit inmate, from her because she thought he was too close. That certainly may reflect poor judgment but it does not amount to cruel and unusual punishment and no jury could reasonably find that it was.

### 2. Relationship Between any Need and the Amount of Force

Cherry has submitted no evidence that he cried out in pain or felt significant discomfort after Shearin pushed him. Instead, Cherry states that, after Shearin pushed him, he stood

---

[12] The Court recognizes the necessity of evaluating Shearin's actions with "the appropriate hesitancy to critique in hindsight decisions necessarily made in haste, under pressure, and frequently without the luxury of a second chance." Whitley, 475 U.S. at 320.

up, made a comment, and walked out of the dining hall. (Compl. 5.)   Nor did Cherry seek immediate medical attention.   (Id. (stating that Cherry did not request medical evaluation for five days after the incident).)   When Cherry eventually sought medical attention, he received only Motrin for his pain. (Brown Aff. ¶ 11.)   These factors indicate "that the amount of force applied [by Shearin] was not extraordinarily powerful." Robertson v. Barriet, No. 1:10cv703 (TSE/IDD), 2011 WL 2728933, at *2 (E.D. Va. July 13, 2011) (citing Wilkins, 130 S. Ct. at 1178.)   Thus, though Shearin's need to use force against Cherry was slight, the actual force used, a shove, was reasonably related to that need.

### 3.   Extent of Shearin's Reasonably Perceived Threat

Shearin denies that she even saw Cherry on June 6, 2008, much less shoved him.   (Shearin Aff. ¶ 4.)   Thus, the record provides no insight into the extent of the perceived threat from Cherry.   The Court can only draw the bare inference from the comment Cherry contends that Shearin made, "Don't get too close to me," that Defendant Shearin felt affronted to some degree. (Compl. 4.)

### 4.   Shearin's Efforts to Temper the Severity of her Response

Likewise, Shearin's denial leaves the Court without evidence that Shearin made, or did not make, an effort to temper

14

her response to Cherry. Nevertheless, even without the benefit of Shearin's perception, none of the evidence raises the inference that Shearin "delight[ed] in cruelty." Howard, 21 F.3d at 872.

### 5. Shearin's Lack of Malicious Motive

As stated above, a defendant's comments which suggest or contradict a malicious motive also are relevant to the subjective inquiry. Orem, 523 F.3d at 447. Shearin's comment, "Don't get too close to me" (Compl. 4), does not support an inference that she had a malicious motive in pushing Cherry. Rather, the comment supports the reasonable inference that Shearin perceived that Cherry was acting inappropriately. Further, Cherry does not assert that he and Shearin had any history of conflict that would support an inference that Shearin's motive was wanton or malicious. See Majette v. GEO Group, Inc., No. 3:07cv591, 2011 WL 166289, at *5 (E.D. Va. Jan. 18, 2011) (the fact that plaintiff and defendant "had a contentious history" favors a finding of malicious intent).

### 6. Cherry's Injuries

Although not dispositive, the extent of the injury suffered by the inmate is relevant to the subjective inquiry. Wilkins, 130 S. Ct. at 1178. Though the relationship between injury and force are "only imperfectly correlated," the extent of the injury "may suggest whether the use of force could plausibly

15

have been thought necessary in a particular situation" or "provide some indication of the amount of force applied." Id. (internal quotation marks omitted).

"[T]he relatively minor injuries sustained by [Cherry] belie the notion that [Shearin's] conduct violated the Eighth Amendment." Majette, 2011 WL 166289 at *6 (citing Whitley, 475 U.S. at 322). Cherry does not indicate that he suffered any immediate pain or discomfort as a result of Shearin's actions. Rather, Cherry's response was to "[rise] back up saying, 'Woman just do your job,'" and exit the dining hall. (Compl. 5.) Cherry's current ailments did not manifest themselves until "time [had] progressed." (Id.) Indeed, Cherry did not request medical evaluation until June 11, 2008, five days after the incident. (Id.)

Moreover, Cherry's medical records support the inference that he suffered from knee and shoulder pain well before his conflict with Shearin on June 6, 2008. (See Brown Aff. ¶¶ 4-10.) Thus, the proof respecting the extent of Cherry's injuries as a result of Shearin's use of force do not weigh in favor of establishing malicious and sadistic intent on the part of Shearin. Williams v. Scott, 433 F. App'x 801, 804 (11th Cir. 2011) (concluding that plaintiff's injuries, neck pain, and continuous headaches, were of a "modest variety" which "runs counter to a finding of malicious and sadistic intent.").

16

Shearin's actions, while perhaps improper and ill-advised, fail to rise to the level of a constitutional violation. In other words, the weight of the evidence, viewed in the light most favorable to Cherry, supports a reasonable inference that Shearin acted in an effort to maintain good order, rather than "maliciously and sadistically for the very purpose of causing harm." Whitley, 475 U.S. 320-21 (internal quotation marks omitted). Accordingly, Cherry's claim will be dismissed.

## IV.   Conclusion

For the foregoing reasons, Shearin's Motion for Summary Judgment (Docket No. 23) will be granted. Cherry's claim will be dismissed and the action will be dismissed.

The Clerk is directed to send a copy of the Memorandum Opinion to Cherry and counsel of record.

It is so ORDERED.

                                   /s/      REP
                        _____
                        Robert E. Payne
                        Senior United States District Judge

Richmond, Virginia
Date: February 28, 2012